UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-04728-CAS-AJRx | Date | August 31, 2026 |
| Title | Northfield Insurance Company v. Northwest Labs, LLC et al. | | |

| | |
|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER |

| | | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Aaron Agness | Kenneth Leong |

Proceedings: ZOOM HEARING RE:

DEFENDANTS NORTHWEST LABS, LLC AND ALYSSA LIANG'S MOTION TO STAY PROCEEDINGS UNTIL UNDERYLING ACTIONS CONCLUDE (Dkt. 22, filed on July 28, 2026)

DEFENDANTS NORTHWEST LABS, LLC AND ALYSSA LIANG'S REQUEST FOR JUDICIAL NOTICE (Dkt. 22-3, filed on July 28, 2026)

## I. INTRODUCTION

On May 1, 2026, plaintiff Northfield Insurance Company ("Northfield Insurance") filed this action against defendants Northwest Labs, LLC ("Northwest Labs"), Alyssa Liang ("Liang"), Donn E. Rediger ("D. Rediger"), and Judith A. Rediger ("J. Rediger") (collectively, "defendants"). Dkt. 1 ("Compl."). Northfield Insurance asserts three claims for relief against all defendants: (1) declaratory judgment that it has no duty to defend defendants; (2) declaratory judgment that it has no duty to indemnify defendants for any judgment or settlement for non-covered damages; and (3) declaratory judgment that it is entitled to reimbursement from defendants for fees and costs incurred by it defending defendants. Id. ¶¶ 39-52.

To date, Northfield Insurance has been providing a defense to defendants in two separate underlying state court actions arising from the same occurrence: (1) a lawsuit

brought by Weg Industrial Electric, Inc. against Northwest Labs and Liang (“Weg Action”), id. ¶¶ 26-31, and (2) a lawsuit brought by Xiaodan Han et al. against D. Rediger and J. Rediger (“Han Action”), id. ¶¶ 32-38.

On July 28, 2026, two of the four defendants, Northwest Labs and Liang (“movants”), filed the instant motion to stay proceedings until the underlying state court action against movants—i.e., the Weg Action—is resolved. Dkt. 22 (“Mot.”). In their motion, movants argue that proceeding in the present action concurrently with the Weg Action will require that they take inconsistent positions in the federal and state actions. Mot. at 17-18. On August 10, 2026, Northfield Insurance filed an opposition. Dkt. 23 (“Opp.”). On August 17, 2026, movants filed a reply. Dkt. 24 (“Reply”).

On August 31, the Court held a hearing. Having carefully considered the parties’ arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

Northfield Insurance alleges the following in its complaint.

### A. Parties

Plaintiff Northfield Insurance is organized under the laws of Iowa with its principal place of business in Hartford, Connecticut. Compl. ¶ 2.

Defendant Northwest Labs is a limited liability company organized under the laws of California with its principal place of business in Baldwin Park, California. Id. ¶ 3. Defendant Liang is a citizen of California and a managing member of Northwest Labs. Id. ¶ 4.

Defendants D. Rediger and J. Rediger (“Rediger defendants”) are citizens of California and trustees of the Rediger Family Trust. Id. ¶¶ 5-7.

### B. Policy

Northfield Insurance issued a commercial general liability coverage policy to Northwest Labs for the period December 8, 2022 to December 8, 2023, under policy no. WS537227 (“Policy”). Id. ¶ 12. The Policy provides commercial general liability coverage and states in relevant part:

**SECTION I – COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . . .

Id. ¶ 14.

The Policy contains a Cannabis Exclusion Endorsement ("Cannabis Exclusion") in "**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**," which states in relevant part:

This insurance does not apply to: . . .

**CANNABIS**

a. "Bodily injury" or "property damage" arising out of the:

(1) Cultivation, sale, manufacture, testing, handling, processing, distribution, marketing or advertising of; or

(2) Actual, alleged or threatened absorption, consumption, ingestion, inhalation or use of, or exposure to, any "cannabis product"; or

b. "Property damage" to any "cannabis product." This exclusion applies to all such "bodily injury" or "property damage," regardless of whether such "bodily injury" or "property damage" is included in the "products-completed operations hazard."

Id. ¶ 17; Ex. 1.

The Policy contains the term “cannabis product” in the **DEFINITIONS** section, which states in relevant part:

a. Means:

(1) Natural or synthetic Tetrahydrocannabinol (THC) or any other cannabinoid, in any form; or

(2) Any good or product that contains natural or synthetic Tetrahydrocannabinol (THC) or any other cannabinoid.

b. Includes:

(1) synthetic Tetrahydrocannabinol (THC) or any other cannabinoid, or with respect to any good or product that contains natural or synthetic Tetrahydrocannabinol (THC) or any other cannabinoid.

(2) Any plant of the genus Cannabis L., or any part thereof, such as seeds, stems, flowers, stalks and roots;

(3) Any compound, byproduct, extract, derivative, mixture or combination of: (a) Resin, oil or wax; (b) Hash or hemp; or (c) Infused liquid or edible cannabis; whether or not derived from any plant or part of any plant per paragraph b.(2) above;

(4) Any smoke, vapor, soot, fume or other substance that results from natural or synthetic Tetrahydrocannabinol (THC) or any other cannabinoid, or from any good or product that contains natural or synthetic Tetrahydrocannabinol (THC) or any other cannabinoid;

(5) Any filter, paper, tip, wrapper or other part of any good or product containing natural or synthetic Tetrahydrocannabinol (THC) or any other cannabinoid;

> (6) Any device used for the absorption, consumption, ingestion, inhalation or delivery of natural or synthetic Tetrahydrocannabinol (THC) or any other cannabinoid, or any container, material, part, equipment or accessory furnished in connection with such device;
>
> (7) Any warranty or representation made at any time with respect to the fitness, quality, durability, performance or use of natural or synthetic Tetrahydrocannabinol (THC) or any other cannabinoid, or with respect to any good or product that contains natural or synthetic Tetrahydrocannabinol (THC) or any other cannabinoid; or
>
> (8) The providing of or failure to provide warnings or instructions with respect to natural or synthetic Tetrahydrocannabinol (THC) or any other cannabinoid, or with respect to any good or product that contains natural or synthetic Tetrahydrocannabinol (THC) or any other cannabinoid.

Id.

### C. Underlying Actions

On October 9, 2023, there was an explosion and fire (“incident”) at a commercial warehouse located in Baldwin Park, California (“premises”), which Northwest Labs had leased from the Rediger defendants. Id. ¶¶ 18, 21, 23; Ex. 7. The incident resulted in property damage, and four individuals sustained fatal injuries. Id. ¶ 21.

Northfield Insurance’s investigators determined that the “most probable cause” of the incident was “a butane vapor explosion” which occurred during “butane honey oil extraction operations going on inside the [p]remises.” Id. ¶ 22. Butane honey oil is “a marijuana extract that is heated until the plant matter is burned away leaving a substance with a high concentration of THC.” Id.

At the time of the incident, however, “Northwest Labs and/or Liang [had] ‘subleased’ the [p]remises to another individual(s) and . . . the individual(s) was allegedly using the [p]remises.” Id. ¶ 25. There is no written contract that documents this sublease. Id.

1. The Weg Action

Weg Industrial Electric, Inc. (“Weg Industrial”) maintains a warehouse next to the premises. Id. ¶ 26. On October 13, 2025, Weg Industrial filed a complaint in the Los Angeles County Superior Court against Northwest Labs and Liang, asserting four claims based on the property damage it sustained from the incident: (1) negligence; (2) strict liability; (3) private nuisance; and (4) premises liability (“Weg Action”). Id. ¶ 28; Ex. 4.

In the complaint, Weg Industrial alleges that “investigators concluded that the October 9, 2023 fire was the result of a manufacturing operation in which butane was used to extract hash oil from cannabis plants and that the butane exploded, causing the fire.” Id. ¶ 29. Weg Industrial also alleges that Northwest Labs is the alter ego of Liang. Id. ¶ 28 (citing Ex. 4).

About two years prior to Weg Industrial’s initiation of the state lawsuit against Northwest Labs and Liang, on October 27, 2023, Weg Industrial filed a claim with Northfield Insurance, alleging that the incident caused “a total loss to its business personal property, equipment, and autos.” Id. ¶ 26.

On December 26, 2023, Northfield Insurance sent a letter addressed to Liang stating that it would provide a defense to Northwest Labs and Liang for the claim subject to a reservation of rights to disclaim coverage. Id. ¶ 27; Ex. 3. The reservation of rights was based, in part, on the Cannabis Exclusion, which excludes coverage for bodily injury, property damages, and personal and advertising injury arising out of the cultivation, sale, manufacture, testing, handling, processing, distribution, marketing or advertising of any “cannabis product.” Id.

In the letter, Northfield Insurance explained that its “investigation to date indicates that the most probable cause of the fire is a butane vapor explosion which occurred during butane honey oil extraction operations going on in the [p]remises” and that “[b]utane honey oil is a marijuana extract that is heated until the plant matter is burned away leaving a substance with a high concentration of THC.” Ex. 3. Northfield Insurance also reserved the right to bring a declaratory judgment action to determine the rights of the parties under the Policy, to withdraw from the defense if it learns that there is no potential for coverage, and to seek reimbursement of defense fees and costs spent to defend claims for damages that were never potentially covered under the Policy. Id. ¶ 27.

2. The Han Action

On September 15, 2025, the surviving family members of two of the individuals who died from the incident filed a lawsuit for wrongful death against the Rediger defendants. Id. ¶ 32.

The complaint in the Han Action alleges that the Rediger Trust was the owner of record of the premises and that the Rediger defendants had leased the premises to one or more of the operators of an "illegal drug trafficking organization that engaged in the manufacturing and distribution of concentrated cannabis, also known as honey oil." Id. ¶¶ 34, 36. It also alleges that decedents were hired by the operators of the cannabis extraction business and that decedents were killed from the incident at the premises. Id. ¶ 37. The Han complaint proceeds on the theory that the Rediger defendants "knew or should have known of the dangerous, careless, negligent and wrongful activities being conducted on the [p]remises." Id. ¶¶ 33, 36.

The Rediger defendants were named in the Policy's endorsement entitled "**ADDITIONAL INSURED**" as lessors of the premises that Northwest Labs and Liang leased. Id. ¶ 18; Ex. 7. On March 9, 2026, Northfield Insurance sent a letter stating that it would defend the Rediger defendants subject to a reservation of rights. Id. ¶ 38. The reservation of rights here was similarly based, in part, on the Cannabis Exclusion of the Policy. Id. In the letter, Northfield Insurance reserved the right to bring a declaratory judgment action in order to determine the rights of the parties under the Policy, to withdraw from the defense if it learns that there is no potential for coverage, and to seek reimbursement of defense fees and costs spent to defend claims for damages that were never potentially covered under the Policy. Id. (citing Ex. 7).

## III. LEGAL STANDARD

### A. Declaratory Judgment Jurisdiction

The Federal Declaratory Judgment Act authorizes federal courts to "declare the rights and other legal relations of any interested party" seeking a declaration. 28 U.S.C. § 2201(a). The language of the Act itself is permissive, stating that courts "*may* declare the rights and other legal relations of any interested party." Id. (emphasis added). "If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon

that court to proceed to the merits before staying or dismissing the action." Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995).

In Brillhart, the Supreme Court articulated three factors that courts should consider when examining the propriety of entertaining a declaratory judgment action: (1) avoiding "needless determination of state law issues"; (2) discouraging litigants from filing declaratory relief actions as a means of "forum shopping"; and (3) avoiding "duplicative litigation." See Gov't Emps. Ins. Co. v. Dizol, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc) (citing Brillhart v. Excess Ins. Co., 316 U.S. 491 (1942)). Although courts may also consider several other factors, the three "Brillhart factors remain the philosophic touchstone" for the district court. R.R. Street & Co. Inc. v. Transport Ins. Co., 656 F.3d 996, 975 (9th Cir. 2011). Essentially, the district court "must balance concerns of judicial administration, comity, and fairness to the litigants." Am. States Ins. Co. v. Kearns, 15 F.3d 142, 144 (9th Cir. 1994) (citation omitted).

In addition to the Brillhart factors, the Ninth Circuit has identified additional considerations such as:

> whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

Dizol, 133 F.3d at 1225 n.5 (quotation omitted).

### B. Discretionary Stay

A district court has discretionary power to stay proceedings. See Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). The court "may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." Leyva v. Certified Grocers of Cal. Ltd., 593 F.2d 857, 863 (9th Cir. 1979). However, case management concerns alone are not necessarily a sufficient ground to stay proceedings.

See Dependable Highway Express v. Navigators Ins. Co., 498 F.3d 1059, 1066 (9th Cir. 2007). Among the interests to be weighed in deciding whether to stay a pending proceeding "are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." Lockyer v. Mirant Corp., 398 F.3d 1098, 1110 (9th Cir. 2005). "'[I]f there is even a fair possibility that the stay . . . will work damage to someone else,' the stay may be inappropriate absent a showing by the moving party of 'hardship or inequity.'" Dependable Highway Express, 498 F.3d at 1066 (quoting Landis, 299 U.S. at 255). However, "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity.'" Lockyer, 398 F.3d at 1112. "The proponent of a stay bears the burden of establishing its need." Clinton v. Jones, 520 U.S. 681, 706 (1997).

## IV. JUDICIAL NOTICE

With their motion to stay, movants request that the Court take judicial notice of: (1) the complaint filed in the Weg Action (Mot., Ex. A); and (2) the complaint filed in the Han Action (Mot., Ex. B). Dkt. 22-3.

Pursuant to the Federal Rules of Evidence, the Court may take judicial notice of a fact "that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). "[U]nder Federal Rule of Evidence 201, a court may take judicial notice of matters of public record." Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). Federal courts can "take notice of proceedings in other courts, both within and [outside of] the federal judicial system, if those proceedings have a direct relation to the matters at issue." San Luis v. Badgley, 136 F. Supp. 2d 1136, 1146 (E.D. Cal. 2000) (quoting U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992)).

Northfield Insurance does not oppose movants' requests for judicial notice of the publicly available court records. See generally Opp. Accordingly, the Court grants movants' unopposed requests for judicial notice. The Court takes judicial notice of the complaints in the underlying state court actions for the limited purpose of indicating what

information is in the public realm, but it does not accept them for the truth of the matters asserted therein. See Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010).

## V. DISCUSSION

In their motion to stay, movants ask the Court to defer exercising its “declaratory jurisdiction and stay this action,” citing the abstention doctrine articulated in Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491 (1942) (“Brillhart”). Mot. at 6, 11-13. Movants also cite California’s legal standard governing a motion to stay, Montrose Chem. Corp. v. Superior Ct., 6 Cal. 4th 287 (1993) (“Montrose”), as well as the federal legal standard governing the same, Landis v. North Am. Co., 299 U.S. 248 (1936) (“Landis”), arguing that a stay is warranted under either standard. Mot. at 13-19.

In its opposition, Northfield Insurance does not appear to contest the applicability of any of those standards and instead appears to address only the merits of movants’ arguments. See generally Opp.

But, of course, only one standard can govern between Montrose and Landis. Furthermore, courts in this circuit have found the Brillhart abstention doctrine inapplicable in actions with similar facts and posture as this present action under certain circumstances. See, e.g., Zurich Am. Ins. Co. v. Omnicell, Inc., No. 18-CV-05345-LHK, 2019 WL 570760, at *4-5 (N.D. Cal. Feb. 12, 2019) (“Where additional claims exist independent of the request for a declaration, the Ninth Circuit has held that the Brillhart factors do not apply.”); Federated Mut. Ins. Co. v. Weinstein, No. 2:24-CV-04609-SPG-MAA, 2025 WL 657913, at *3 (C.D. Cal. Jan. 16, 2025) (finding that Brillhart factors do not apply because “Plaintiff’s complaint seeks not only declaratory relief, but also reimbursement for defense costs advanced to the Insureds in the underlying action”).

Thus, as a threshold matter, this Court must determine which standard(s) applies to the instant motion. For reasons given below, the Court finds that the operative legal standards are Brillhart and Landis, not Montrose.

First, stays are procedural, so federal law governs. See U.S. Specialty Ins. Co. v. Bell Painting, No. 3:22-CV-03787-WHO, 2023 WL 5725582, at *2 (N.D. Cal. Aug. 9, 2023) (collecting cases and citing, among others, Zurich, 2019 WL 570760, at *2-5). Thus, to the extent that movants cite and rely on California’s legal standard for

addressing a motion to stay as articulated in Montrose, see Mot. at 13, the Court concludes that reliance is misplaced.

Second, federal courts have inherent authority to stay cases under Landis and can also stay declaratory relief cases under Brillhart. See Wilton v. Seven Falls Co., 515 U.S. 277, 289 (1995) (finding that the district court acted within its bounds in staying an action for declaratory relief pursuant to Brillhart). Here, both Landis and Brillhart are relevant because Northfield Insurance seeks only declaratory relief, Compl. ¶¶ 39-52. See Scotts Co. LLC v. Seeds, Inc., 688 F.3d 1154, 1158 (9th Cir. 2012) (finding that Brillhart applies where "an action seeks only declaratory relief" and no claims exist "independent" of the request for a declaration) (internal citation and quotation omitted); Westport Ins. Corp. v. Roman Cath. Archbishop of San Francisco, No. 25-CV-09314-RFL, 2026 WL 1396403, at *2 (N.D. Cal. May 19, 2026) ("Westport") (finding that both Brillhart and Landis are both relevant because plaintiff "seeks only declaratory relief"); cf. Benchmark Ins. Co. v. Jalita Corp., No. 522CV00429JWHSHK, 2023 WL 4155384, at *2 (C.D. Cal. May 1, 2023) (holding *Brillhart* inapplicable because the claim for declaratory relief was paired with a claim for reimbursement).

After finding both Brillhart and Landis relevant, the Westport Court led with the Landis analysis because "Landis' authority is broader, so starting there makes sense." Westport, 2026 WL 1396403, at *2. This Court, however, proceeds with Brillhart first, determining that the jurisdictional question should be addressed first.

### A. Brillhart

Movants seek a stay of this federal lawsuit pursuant to Brillhart, arguing that: (1) the facts material to the coverage question in this action are contested in the state case; (2) Northfield Insurance seeks advance factual or preclusive advantage by proceeding in this forum while movants defend the underlying suit; (3) the state action is "better positioned to resolve the operative facts first," and a stay would permit the coverage dispute to proceed later on a "more developed and reliable factual record." Mot. at 11-13.

In opposition, Northfield Insurance argues that a stay is not warranted pursuant to Brillhart because: (1) this action and the state action do not contain identical factual and legal issues; (2) Northfield Insurance has not engaged in improper forum shopping

through its filing of the instant action; and (3) proceeding with this action will not result in piecemeal and duplicative litigation. Opp. at 8-26.

In reply, movants largely repeat their arguments but emphasize that Brillhart does not require identical causes of action or a separate state-court coverage claim. Reply at 12-13.

As stated above, the U.S. Supreme Court articulated in Brillhart the three factors that courts should consider when examining the propriety of entertaining a declaratory judgment action: (1) avoiding needless determination of state law issues; (2) discouraging forum shopping; and (3) avoiding duplicative litigation. Dizol, 133 F.3d at 1224. Although the Brillhart factors "are not exhaustive," they "remain the philosophical touchstone for the district court." Id. at 1225, 1225 n.5. The Court concludes that, at this time, the Brillhart factors favor retaining jurisdiction over this action and counsel against a stay.

1. Determinations of State Law

The first Brillhart factor governs in favor of a stay "[i]f the coverage claim necessitates determinations of *unsettled* issues of state law." Hanover Ins. Co. v. Paul M. Zagaris, Inc., No. C 16-01099 WHA, 2016 WL 3443387, at *4 (N.D. Cal. June 23, 2016) (citing Dizol, 133 F.3d at 1225) (emphasis added); see also Am. Bankers Ins. Co. v. Rossoll, 2016 U.S. Dist. LEXIS 188352, *6 (2016) ("The concern is with unsettled issues of state law, not fact-finding in the specific case.") (citing Cont'l Cas. Co. v. Robsac Indus., 947 F.2d 1367, 1371 (9th Cir. 1991), overruled on other grounds by Dizol, 133 F.3d at 1227). However, where, as here, the declaratory judgment claim requires application of settled principles of state law and "the issues concerning insurance coverage are not particularly complex or novel," the first Brillhart factor weighs against a stay. Hanover, 2016 WL 3443387, at *4 (citing Dizol, 133 F.3d at 1225).

Moreover, there is no requirement to abstain where, as here, the state tort proceeding does not involve the same legal issues as the federal declaratory action. See Am. Cas. Co. v. Krieger, 181 F.3d 1113, 1119 (1999). Indeed, here, the state-court complaint seeks damages for alleged tortious conduct, Compl. at Ex. 4, whereas the complaint in this federal lawsuit seeks declarations regarding Northfield Insurance's obligations under the Policy, id. ¶¶ 39-52. Accordingly, the first Brillhart factor weighs against staying the case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O'**

| Case No. | 2:26-cv-04728-CAS-AJRx | Date | August 31, 2026 |
|---|---|---|---|
| Title | Northfield Insurance Company v. Northwest Labs, LLC et al. | | |

2. Forum Shopping

The second Brillhart factor invites the Court to consider whether a federal action has been filed as a means of forum shopping. In the insurance coverage context, "[t]his factor usually is understood to favor discouraging an insurer from . . . filing a federal court declaratory action to see if it might fare better in federal court at the same time the insurer is engaged in a state court action." Krieger, 181 F.3d at 1119. The Ninth Circuit has described this factor as relating to "defensive" or "reactive" suits. Robsac, 947 F.2d at 1371.

Here, Northfield Insurance is not a party to the state court action and did not file a defensive or reactive suit by proceeding in a federal forum. See AIX Specialty Ins. Co. v. Ferratex, Inc., No. C 16-01023 SBA, 2017 WL 4856869, at *6 (N.D. Cal. June 9, 2017) (concluding the same). While Northfield Insurance could have filed its declaratory relief action in state court, its mere desire for a federal forum does not constitute forum shopping. See, e.g., First State Ins. Co. v. Callan Assocs., Inc., 113 F.3d 161, 162 (9th Cir. 1997) ("Although occasionally stigmatized as 'forum shopping,' the desire for a federal forum is assured by the constitutional provision for diversity jurisdiction and the congressional statute implementing Article III."). Accordingly, the second Brillhart factor weighs against staying the case.

3. Duplicative Litigation

The third Brillhart factor considers whether the federal case would create duplicative litigation. Hanover, 2016 WL 3443387, at *3. Courts in this circuit have approached analyzing this final Brillhart factor somewhat differently. Some courts, relying on Dizol, find that when the federal action and the state action do not involve the *same* issues and parties, there is no risk of duplicative litigation. See, e.g., Travelers Cas. Ins. Co. of Am. v. Am. Home Realty Network, Inc., No. 13-0360 SC, 2013 WL 1808984, at *7 (N.D. Cal. Apr. 29, 2013); Liberty Mut. Fire Ins. Co. v. SCI Infrastructure, LLC, No. 3:20-CV-06084-RAJ, 2021 WL 3288094, at *4 (W.D. Wash. Aug. 2, 2021). Other courts opt for a broader approach, finding that when the federal court, in resolving the issues before it, must make factual determinations that remain disputed in the state court, the two actions are parallel and the federal action, duplicative. See, e.g., WCF Nat'l Ins. Co. v. Gilligan Com. LLC, No. CV-24-03497-PHX-DWL, 2025 WL 2771368, at *11 (D. Ariz. Sept. 29, 2025); B.D. Props. Hawaii, LLC v. Axis Surplus Ins. Co., No. CIV. 13-

00619 ACK, 2014 WL 360004, at *3 (D. Haw. Feb. 3, 2014), report and recommendation adopted, No. CV 13-00619 ACK-BMK, 2014 WL 771118 (D. Haw. Feb. 25, 2014).

The Court need not determine which approach it finds more persuasive because the result is the same under either approach in this case. In analyzing this factor, the Court considers Northfield Insurance's three claims for relief separately. See Gemini Ins. Co. v. Kukui'ula Dev. Co. (Hawaii), LLC, No. CV 10-00637 LEK-BMK, 2011 WL 3490253, at *8 (D. Haw. Aug. 10, 2011).

*a. Duty to Defend*

Movants do not substantively engage with the final Brillhart factor as it relates to the duty to defend issue. See generally Mot. However, in other parts of the motion, movants appear to argue that the Court's adjudication of coverage depends on facts disputed in the underlying state action that (1) cannabis extraction occurred at the premises and (2) movants operated or permitted that activity. Mot. at 9. Movants further argue that those factual disputes bear "directly on Weg's liability claims" as well as on "Northfield's application of the Cannabis Exclusion." Id. at 14.

In opposition, Northfield Insurance argues that duplicative litigation would not result here because Northfield Insurance is "not a party to the underlying state court action, and the scope of [movants'] insurance coverage is not at issue in that case." Opp. at 21. Northfield Insurance further argues that this Court will "not need to decide, or even address, any questions regarding [movants'] potential liability in the Weg Action." Id. at 21-22.

In reply, movants argue that although the legal issues are different in the two actions and Northfield Insurance is not a party to the underlying state action, neither fact is dispositive here. Reply at 12.

Movants' and Northfield Insurance's arguments, overall, track the diverging approaches courts have taken in this circuit. Under either approach, the Court concludes that there is little risk of duplicative litigation if the Court were to retain jurisdiction and decide the duty to defend issue. First, Northfield Insurance is not a party to the underlying state action, and the two actions deal with different legal issues as only the declaratory judgment action would determine the parties' contractual rights. See Allstate Ins. Co. v. Herron, 634 F. 3d 1101, 1108 (9th Cir. 2011) (concluding that the district

court did not abuse its discretion by maintaining jurisdiction over the insurer's declaratory judgment action because "[t]his case presents a straightforward contract dispute between [the insurer] and [the insured], over which the district court has jurisdiction based on the parties' diversity.").

Second, resolution of the duty to defend issue does not require this Court to make determinations of facts that remain disputed in the state action. Under California law, the duty to defend turns on whether the allegations of the underlying complaint and facts otherwise known to the insurer reveal a potential for coverage. Hudson Ins. Co. v. Colony Ins. Co., 624 F.3d 1264, 1267 (9th Cir. 2010). Thus, although movants dispute the Weg complaint's assertion that the incident was caused by cannabis-related activity, the Court can and intends to resolve the duty to defend issue by relying on facts known to the insurer and extrinsic to the third-party complaint. Movants' assertion that this Court will need to make factual determinations of matters under dispute in state court is speculative at best as it relates to the duty to defend issue. If the posture arises where a coverage question hinges precisely on a disputed factual question at issue in the Weg Action, the Court can defer to that state action at that time. Accordingly, this factor favors the Court's retaining jurisdiction over this action.

*b. Duty to Indemnify and Right to Reimbursement*

Because the Court has determined that it is appropriate to retain jurisdiction and hear Northfield Insurance's declaratory relief claim regarding its duty to defend, the Court need not now determine whether the claims regarding the duty to indemnify and the right to reimbursement should proceed while the state action is pending. That is because those questions may be affected by the Court's resolution of the duty to defend and are thus better addressed after it has determined that issue. Indeed, "the duty to defend is broader than the duty to indemnify," and a potential determination by this Court that there is no duty to defend would "automatically mean[] that there is no duty to indemnify" and that Northfield Insurance is entitled to reimbursement. K.B. ex rel. Kanteiko v. Hartford Cas. Ins. Co., 608 F. App'x. 492 (9th Cir. 2015) (citing Certain Underwriters at Lloyd's of London v. Superior Ct., 16 P.3d 94, 104 (2001)). It would thus be premature to grant a partial stay for the duty to indemnify and the right to reimbursement issues.

Accordingly, none of the Brillhart factors justify staying the federal action altogether by deferring jurisdiction.

**B. Landis**

The Court finds that Landis factors also counsel against a stay. For reasons articulated in Section A.3(b), supra, the Court focuses its Landis analysis on the duty to defend issue.

In determining whether to stay a proceeding, the court considers the three factors the U.S. Supreme Court identified in Landis: (1) “the possible damage which may result from the granting of a stay”; (2) “the hardship or inequity which a party may suffer in being required to go forward”; and (3) “the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.” CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962) (citing Landis, 299 U.S. at 254-55). The party seeking a stay bears the burden of demonstrating a clear case of hardship or inequity if required to proceed. Landis, 299 U.S. at 255.

1. Hardship or Inequity to Movants

Movants argue that proceeding in both the state case and the federal case would require them to “address the same underlying events in two forums against adverse parties with different objectives.” Mot. at 17. Movants argue that the federal action would require movants to respond to Northfield Insurance’s allegations concerning “their knowledge, control of the premises, relationship with the occupants, and involvement in the alleged extraction activities,” which “remain disputed” in the state action and are central to their liability defense against Weg Industrial’s allegations of “conscious disregard and concealment.” Id. Thus, movants’ main concern appears to be that they would be “forced to take positions” on those questions in this federal action, which could, in turn, “be used against [movants] in the Weg Action.” Id.

These objections are only viable, however, to the extent that this action and the Weg Action require the resolution of overlapping factual issues as the Court resolves the duty to defend issue. Because this Court already determined that they do not, movants have failed to establish “hardship or inequity” justifying a stay in this case.

2. Judicial Economy

Neither judicial economy nor the convenience of the parties favors staying this case pending the completion of the Weg Action. As stated above, the resolution of the Weg Action will not clarify issues of fact that bear on Northfield Insurance's declaratory relief claim concerning its duty to defend. The question of Northfield Insurance's duty to defend the movants in the Weg Action is ripe for decision by this Court as a matter of law. Accordingly, this factor weighs against a stay.

3. Potential Damage to Northfield Insurance

The final Landis factor—the potential harm to Northfield Insurance if a stay is issued by this Court—although not determinative here, counsels slightly against a stay. If these proceedings are stayed, Northfield Insurance will be forced to continue to pay defense costs even though it may not have had a duty to defend in the first instance.

Most courts have rejected the argument that an insurer would be damaged by a stay that requires the insurer to continue to defend an insured before an ultimate coverage determination is made. See, e.g., Zurich, 2019 WL 570760, at *5; United Specialty Ins. Co. v. Bani Auto Grp., Inc., 2018 WL 5291992, at *5 (N.D. Cal. 2018); N. River Ins. Co. v. Leffingwell Ag Sales Co. Inc., 2011 WL 304579, at *6 (E.D. Cal. 2011) (noting "a delay in recovering potential monetary damages is not sufficient harm"); State Nat'l Ins. Co., Inc. v. USCase SINO Inv., Inc., No. 5-13-CV-05240-EJD, 2015 WL 5590842, at *5 (N.D. Cal. Sept. 23, 2015) (noting that advancing defense costs "is part of an insurer's obligation and costs of doing business.").

However, at least a handful of courts in this circuit have recognized that delaying a determination regarding an insurer's duty to defend presents a fair possibility of harm to the insurer. See, e.g., Evanston Ins. Co. v. Keepers Fin. Corp., No. CV 11-1107-MMM (JEMx), 2011 WL 13220156, at *6 (C.D. Cal. Oct. 13, 2011); Great Am. Assurance Co. v. M.S. Indus. Sheet Metal, Inc., No. SACV11754JSTMLGX, 2011 WL 13228037, at *5 (C.D. Cal. Sept. 22, 2011); Carolina Cas. Ins. Co. v. Helsley, 2011 WL 121576, at *1 (E.D. Cal. Jan. 13, 2011); Cont'l Cas. Co. v. Glob. Allies, LLC, No. 2:11-cv-03237-MCE-KJN, 2012 WL 5289315, at *4 (E.D. Cal. Oct. 23, 2012).

Given this split, the Court concludes that this factor tips the scale slightly against a stay. In any case, because movants have not carried their burden as to the first two

factors, the Court finds that the Landis factors do not presently warrant a stay of the action.

## VI. CONCLUSION

In accordance with the foregoing, the Court **DENIES** movants' motion to stay proceedings, without prejudice.

The Court **GRANTS** movants' request to continue their obligation to respond to the complaint. Movants shall have until fourteen (14) days after the date of this order to respond.

Movants will be given leave to re-file their motion to stay, if necessary, after the appropriate motion regarding Northfield Insurance's duty to defend is filed and decided by this Court.

IT IS SO ORDERED.

00 : 02

Initials of Preparer CMJ